```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
_____
                              )
JUDICIAL WATCH, INC.,         )
                              )
        Plaintiff,            )
                              )
    v.                        )    Civil Action No. 11-500 (GK)
                              )
UNITED STATES DEPARTMENT      )
OF JUSTICE,                   )
                              )
        Defendant.            )
_____)
```

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc., brings this action against Defendant, the United States Department of Justice ("DoJ"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks records of any communications between the Civil Rights Division of DoJ and the National Association for the Advancement of Colored People Legal Defense Fund ("NAACP-LDF") concerning U.S. v. New Black Panther Party for Self-Defense, Case No. 2:09-cv-0065 (E.D. Pa. filed Jan. 7, 2009) ("NBPP"). This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 10]. Upon consideration of the Motion, Opposition, and Reply, and the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **granted.**

## I. BACKGROUND[1]

Plaintiff is a non-profit educational foundation seeking to promote "integrity, transparency, and accountability in government." Compl. ¶ 3 [Dkt. No. 1]. This case concerns Plaintiff's efforts to investigate Defendant's dismissal of voter intimidation claims against three defendants in NBPP. On November 2, 2010, Plaintiff sent Defendant a FOIA request seeking access to any and all records of communications between the "Civil Rights Division and the [NAACP] Legal Defense Fund (including, but not limited to communications with Kristen Clarke, Director of Political Participation) concerning, regarding, or relating to U.S. v. New Black Panther Party for Self-Defense, et. al." Plaintiff limited the relevant time period for the request to November 4, 2008, to May 22, 2009.

On March 9, 2011, Plaintiff filed this suit seeking to compel Defendant to search for and produce all non-exempt records responsive to Plaintiff's FOIA request. At the time the Complaint was filed, Plaintiff had not received any response from Defendant regarding its FOIA request. Compl. ¶ 6. In a letter dated April 19, 2011, Defendant informed Plaintiff that a search had been conducted and that it had not located any records responsive to the request.

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

On May 6, 2011, Defendant filed the present Motion for Summary Judgment. On May 27, 2011, Plaintiff filed its Opposition [Dkt. No. 11]. On June 10, 2011, Defendant filed its Reply [Dkt. No. 12].

**II. STANDARD OF REVIEW**

FOIA cases are typically and appropriately decided on motions for summary judgment. Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d 123, 130 (D.D.C. 2011); Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "The standard governing a grant of summary judgment in favor of an agency's claim that it has fully discharged its disclosure obligations under FOIA is well-established . . . . [T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); see also Fed. R. Civ. P. 56(c).

The purpose of FOIA is to "facilitate public access to Government documents" and "to pierce the veil of secrecy and to open agency action to the light of public scrutiny." McCutchen v. United States Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (internal quotations omitted). In responding to a FOIA request, an agency is under an obligation to conduct a reasonable search for responsive records. Oglesby v. United States

Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351.

To show reasonableness at the summary judgment phase and to allow the court to determine if the search was adequate, an agency must provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68. Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III. ANALYSIS

Plaintiff opposes Defendant's Motion on the ground that Defendant's search for responsive documents was inadequate. Pl.'s Opp'n 4. As noted above, to demonstrate that a search is adequate, the agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68. Agencies must "follow through on obvious leads to

4

discover requested documents." Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999). There is no requirement, however, that an agency search every record system in which responsive documents might conceivably be found. Oglesby, 920 F.2d at 68. Still, the agency cannot limit its search to only one record system if there are others that are likely to produce the information requested. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995).

According to the Declaration of Nelson D. Hermilla, the Chief of the Freedom of Information/Privacy Act Branch of the Civil Rights Division of the Department of Justice, on November 10, 2010, Defendant commenced a three-prong search for documents in response to Plaintiff's request. Hermilla Decl. ¶¶ 1, 5-6 [Dkt. No. 10-3]. First, Defendant conducted a tailored search within the records of the Voting Section, the Section within the Civil Rights Division that handled the prosecution of NBPP. Id. ¶¶ 5-6. The Voting Section conducted searches of all emails, networks, and local files for "Kristen Clarke" and "NAACP." Id. ¶¶ 8-9. The search term "NAACP" was used because it is included in the suffix of the business email addresses of all NAACP-LDF employees, i.e, "___@NAACPLDF.org," and therefore would retrieve any emails from or to NAACP-LDF employees. Id. ¶ 8. The Voting Section conducted additional searches within the requested date range of November 4,

5

2008, through May 22, 2009, in order to confirm that all responsive documents were found.[2] Id. ¶ 10.

Second, Defendant reviewed "the results of prior searches for NBPP-related records in response to requests from other FOIA requesters and the United States Commission on Civil Rights ('USCCR'), which examined the Department's handling of the New Black Panther Party case." Id. ¶ 6. Because the Civil Rights Division had received a number of previous, broader FOIA requests for Voting Section records related to NBPP, the Division had a set of previously collected materials referred to as the "NBPP Collection." Id. ¶¶ 12-15. This collection contained the results from searches of all Division activity in connection with NBPP, and constituted the Division's most comprehensive compilation of NBPP records. Id. ¶ 14. The materials included all the paper and electronic records of Civil Division employees who had worked on NBPP, collected by "the Office of the Assistant Attorney General, Administrative Management, and the Appellate, Criminal, Housing, Civil Enforcement, and Voting Sections." Id.

---

[2] In its Motion, Defendant states that these additional searches were actually a "date-range search for records in the period 'November 4, 2008 through May 22, 2009,'" the results of which were reviewed for responsive communications. Def.'s Mot. 6. However, the Hermilla Declaration is not so specific, and only references "searches within the requested date range . . . to be certain that the search for responsive records was as thorough as possible." Hermilla Decl. ¶ 10.

The Civil Rights Division reviewed the NBPP collection for responsiveness to Plaintiff's request by conducting searches within the collection for terms such as "Kristen Clarke," "National Association for the Advancement of Colored People," and permutations of these names. Id. ¶ 16. The Division also used synonym lists and combinations of the search parameters, which included terms and dates, in order to find those records in which there were misspellings, nicknames, or poor quality or bad optical character resolution. Id.

Third, Defendant searched USCCR's website, which contained various documents and materials relating to the NBPP litigation. Id. ¶ 17. On that website, the Division found copies of four emails from Civil Rights Division employees "forwarding news articles about the New Black Panther Party case to Kristen Clarke." Id. ¶ 18. Of the four, only one email was within the time period of Plaintiff's request. Id.

Thereafter, Defendant conducted a search using the employees' names, the dates of emails, and "unique words and language" found in the text of all four of the emails on the USCCR website. Id. ¶ 19. Defendant searched "all Voting Section emails, network, and local files, as well as the NBPP Collection." Id. Defendant also conducted searches in the files of the employees who sent the emails displayed on the USCCR's site. Id. ¶ 20. Despite these searches, however, the "Defendant did not locate either the

specific emails from Ms. Clarke's deposition," conducted on January 8, 2010, by the USCCR, "or any other responsive records." Id.

Plaintiff argues that these Civil Rights Division searches were deficient because they failed to locate an email sent on January 19, 2009, from Judith Reed, an employee of Defendant, to Kristen Clarke. Pl.'s Opp'n 4. Plaintiffs state that this email was introduced during the USCCR's deposition of Ms. Clarke. Id. at 4-5. Plaintiff argues that because "Defendant admits it used the Commission's records when formulating its search and still did not discover the January 19, 2009 e-mail, Defendant has clearly failed to demonstrate that its search was reasonable." Id. at 5. Similarly, Plaintiff argues that because the Division claims to have used "___@NAACPLDF.org" as a search term, it is unlikely that the January 19, 2009, email, which contained the term, would not have been uncovered by a reasonable document search. Id.

Defendant's affidavit provides a plausible explanation for the failure of a reasonable search to locate a copy of the email to Kristen Clarke on the USCCR's website. The Division's policy "is to retain emails that are appropriate for preservation because they contain substantive information concerning agency activities." Hermilla Decl. ¶ 21. Emails that "contain minimal or no documentary or evidential value . . . are not retained." Id. "Further, documents deleted within twenty-four hours are not retained in any electronic repository." Id.

8

In response to Defendant's explanation of its email retention procedure, Plaintiff argues that the January 19, 2009, email "clearly contains more than a forwarded newspaper article" because a statement in the email, "Don't know if you were aware of this <u>latest</u> lawsuit," suggests prior communications. Pl.'s Opp'n 5 (emphasis in Plaintiff's Opposition). Plaintiff contends that this language indicates that "Ms. Reed had had prior communications with Ms. Clarke about the <u>Black Panther</u> litigation." <u>Id.</u>

Plaintiff's argument is, to say the least, creative. The logical reading of the phrase "latest lawsuit" is simply that Ms. Reed was identifying the lawsuit to which she was referring as the most recent in time. The phrase "latest lawsuit" does not unambiguously demonstrate that Ms. Reed contacted Ms. Clarke about any other lawsuit or topic. Plaintiff's argument is the type of "'purely speculative claim[] about the existence and discoverability of other documents'" which is insufficient to rebut the "presumption of good faith" accorded to the Hermilla Declaration. <u>SafeCard</u>, 926 F.2d at 1200 (quoting <u>Ground Saucer Watch</u>, 692 F.2d at 771).

Moreover, "adequacy of a search is not determined by its results, but by the method of the search itself." <u>Saldana v. Fed. Bureau of Prisons</u>, 715 F. Supp. 2d 24, 26 (D.D.C. 2010) (citing <u>Weisberg v. United States Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Indeed, "an agency's failure to find a

9

particular document does not undermine the determination that the search was adequate" and "there could be several possible reasons other than an inadequate search for why particular records are not located." Jefferson v. Bureau of Prisons, 578 F. Supp. 2d 55, 58 (D.D.C. 2008) (citing Wilbur v. Cent. Intelligence Agency, 355 F.3d 675, 678 (D.C. Cir. 2004)). As our Court of Appeals has stated, "there is no requirement that an agency produce all responsive documents." Nation Magazine, 71 F.3d at 892 n.7 (emphasis in original). Plaintiff is simply wrong, therefore, when it argues that Defendant's search was inadequate "[b]ecause at least one record exists that is responsive to Plaintiff's request," which was not produced. Pl.'s Opp'n 5. To the contrary, Defendant has submitted a reasonably detailed affidavit explaining a three-pronged search that was "reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted**. An Order shall accompany this Memorandum Opinion.

August 22, 2011

/s/
Gladys Kessler
United States District Judge